UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN ANTONIO SOLOMON,

        Plaintiff,                          No. 19-12354

v.                                     District Judge Terrence G. Berg
                                       Magistrate Judge R. Steven Whalen

MICHIGAN DEPT. OF CORRECTIONS,
ET AL.,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

On August 8, 2019, Plaintiff, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*. He has since filed 17 amended or supplemental complaints.

Before the Court is his motion for "temporary restraining order and injunctive relief" [ECF No. 66], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that the motion be DENIED.

**I.  FACTS**

Plaintiff filed his complaint on August 8, 2019 [ECF No. 1], and since that time has filed numerous "supplemental complaints" [ECF Nos. 16, 26, 35, 42, 44, 45, 47, 49,

52, 53, 58, 61, 73, 74, 79, 82, 84].[1] On August 30, 2019, he was granted leave to proceed *in forma pauperis*, without pre-payment of the filing fee [ECF No. 12]. On October 21, 2019, the Court entered a deficiency order directing Plaintiff to file 24 additional copies of his complaint and attachments for service on the Defendants [ECF No. 36]. On November 6, 2019, pretrial matters were referred to me [ECF No. 51]. Plaintiff corrected the deficiency on November 12, 2019.

To date, no Defendant has been served.[2]

In the present motion [ECF No. 66], Plaintiff states that he suffers from an infection in his left big toe that is not being adequately treated. In December of 2019, he was housed at the MDOC/Duane Waters Health Center, and was taken to Henry Ford Allegiance, an outside medical facility, following complaints of chest pain. He was apparently returned to Henry Ford at least one more time, and received Augmentin, an antibiotic. He alleges that around December 29, 2019, a doctor at Henry Ford told him that surgery on his toe was necessary. He states that on return to the MDOC, the pain medications and antibiotics were not working.

---

[1] On October 18, 2019, the Court issued an opinion and order [ECF No. 31] dismissing in part his original complaint [ECF No. 1]. On the same date, the Court entered a second opinion and order [ECF No. 32] dismissing Plaintiff's supplemental complaint [ECF No. 26]. The supplemental complaint [ECF No. 26] was dismissed under Fed.R.civ.P. 8(a), with the Court noting the impossibility of sifting "through 800 pages of materials to discern the who, what, and where of Plaintiff's claims and his bases for releief as to each of the defendants." ECF No. 32, PageID.1351. The Court added that "[a]ny similar supplemental complaints or pleadings filed by Plaintiff will be stricken from the record by text-only order." *Id*.

[2] I will address the issue of service by separate order, but to do so I must first determine which of the Plaintiff's numerous "supplemental complaints," which name different Defendants and bring different claims, is the operative pleading, and must then determine if any are in compliance with Rule 8(a) or are dismissible under the Court's previous order [ECF No. 32]. Further complicating the issue is the fact that service by the U.S. Marshal has been adversely affected due to the COVID pandemic and the closure of the Detroit federal courthouse.

Plaintiff also filed a declaration in support of the present motion [ECF No. 67]. This declaration focuses not on his toe infection, but on his pulmonary condition, which, he says, is related to blood clots in his lungs that cause him to cough up blood. He states that on December 27, 2019, following complaints of chest pain, he was sent to the Henry Ford facility, which found no urgent heart condition. He was sent back to Henry Ford two days later, at which time he was informed of blood clots and the need for him to be on "blood thinners," specifically heparin, which is administered intravenously. Heparin was in fact given, and then discontinued when Plaintiff was returned to the Duane Waters facility.

Plaintiff states that he was discharged from Henry Ford and sent back to the Duane Waters facility with the blood clots still remaining. However, he was again sent back to Henry Ford when he continued to cough up blood. At Henry Ford, x-rays were taken. He states that he is given Norco for pain, although he wanted to increase the dosage from every 8 hours to every 4 to 6 hours.

In terms of relief, Plaintiff seeks an order requiring the MDOC to send him back to the hospital "until all blood clots are abolished and/or proper surgical intervention is taken to stop the blood clots from reaching my heart." ECF No. 67, PageID.1885.

Consistent with his penchant for piecemeal litigation, Plaintiff has filed a series of "supplemental declarations" in support of his request for injunctive relief. *See* ECF Nos. 71, 72, 75, 78, 80, 85, 86, 88, and 91. For the most part, these declaration concern Plaintiff's claim that he is being denied adequate treatment for blood clots. However, in ECF No. 78 he alleges that there although he is supposed to be catheterized every four hours, there have been some delays in cathetarization. And in ECF Nos. 88 and 91, he alleges that the prescribed medication Xarelto is being denied.

A common thread in Plaintiff's declarations is that the Defendants are intentionally denying medical care for the purpose of killing him. *See, eg.*, ECF No. 75, PageID.1979 ("MDOC defendants intentionally cause delays for the sole purpose to cause the death of Plaintiff/me"); ECF No. 85, PageID.2066 ("MDOC defendants Mr. Crane is still interfering with prescribed Xarelto treatment to cause the death of me.").

Attached to Plaintiff's declaration in ECF No. 86 are medical records from two admissions to Henry Ford on December 31, 2019 and January 4, 2019. ECF No. 86, PageID.2072-2082. The records note an infected nail on the left toe. *Id.*, PageID.2072-2073. The left toenail was removed and Plaintiff was given doxycycline, an antibiotic. *Id.*, PageID.2073,2075.  Given that this was Plaintiff's "3rd visit for chest pain," he was admitted to the hospital and placed on heparin, an anti-coagulant. *Id.*, PageID.2073. Following laboratory and radiological tests, he was diagnosed with bilateral pulmonary embolism and hypertension. *Id.*, PageID.2074. An echocardiogram was ordered, and Plaintiff was continued on a heparin drip. *Id.*, PageID.2075. He was discharged with a prescription for Coumadin. In addition, the discharge notes state:

> "Patient initially started on heparin and warfarin for bridging. Transition to Lovenox...Patient need minimum of 3-6 months of therapy with warfarin....Patient was able to tolerate Lovenox."  *Id.*, PageID.2078.

Plaintiff was re-admitted to Henry Ford Emergency Department on January 4, 2020, the day after his discharge, again with complaints of chest pain. On examination, he was found to be in "no acute distress," and his lungs were clear. Plaintiff stated at that time that he was on Coumadin and compliant with his medication. *Id.*, PageID.2082.

From the time Plaintiff filed the present motion (as well as from the time he filed his complaint) until approximately June 7, 2020, he was housed at Duane Waters, the MDOC medical facility. On July 1, 2020, he filed a notice, dated June 7th, that he had

been transferred to the Woodland Correctional Facility. ECF No. 95, PageID.2127.

## II.   STANDARD OF REVIEW

Generally, in determining whether to grant injunctive relief, a court must examine and weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573.

Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate. Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed."). Plaintiffs bear the burden of demonstrating their entitlement to a preliminary injunction or TRO, and their burden is a heavy one. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, at 573. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739

(6th Cir. 2000). Thus, plaintiffs may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate their entitlement to injunctive relief.

### III.  DISCUSSION

#### A.  Likelihood of Success

First, Plaintiff alleges that his inadequate medical care occurred while he was housed at the Charles Egeler/Duane Waters Medical Facility. However, he has since been transferred to the Woodland Correctional Facility. A prisoner's claims for injunctive relief based on incidents occurring in one prison become moot once the prisoner is transferred to another prison. *Kensu v. Haight*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir.2003) (prisoner's claim for injunctive relief against prison officials became moot when he was transferred from the prison of which he complained to a different facility).  Because his claim for injunctive relief is moot, he has no likelihood of success on the merits.[3]

Nor has Plaintiff shown a likelihood of success even under a substantive analysis of his claims. While Plaintiff undoubtedly suffers from serious medical conditions, his own filings show that he has received ongoing evaluation and treatment, and that his dissatisfaction is merely based on his disagreement with what medical personnel have ordered. For example, he wishes to be returned to an outside hospital and be again placed on a heparin drip, which he believes would be more effective than oral anticoagulants such as Coumadin or Warfarin. But a prisoner's disagreement with a course of treatment is insufficient to state a constitutional violation. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (where "a prisoner has received some medical attention and the

---

[3] I note that since Plaintiff was moved to Woodland, he has not filed any additional "supplements" complaining about his health care.

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"); *Owens v. Hutchinson*, 79 Fed.Appx. 159, 161 (6th Cir. 2003) (finding no deliberate indifference where the patient did not receive his desired antiviral therapy because his disagreement with the reasoned treatment decisions made concerning his HCV infection did not entitle him to relief). There is no entitlement to relief even when the medically prescribed treatment is not as effective as some alternative treatment, or even if it is deemed negligent. *See Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999) ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

      Here, from the time he filed his complaint until June of 2020, he was in fact housed at Duane Waters, a medical unit. As shown in the medical records contained in ECF No. 86, Plaintiff received medical attention focused on not only his toe infection (which was resolved by removal of the toenail and antibiotics), but his pulmonary embolisms, which were diagnosed with appropriate clinical testing, and treated, first with a heparin drip while Plaintiff was in the hospital, and then bridging to Coumadin and Warfarin. Nor does an occasional delay in catheterizing rise to the level of a constitutional violation. I do not question Plaintiff's complaints of and frustration with continuing discomfort, but he has not shown that they are the result of constitutionally inadequate medical care. And he has not come close to supporting his fanciful belief that all of his medical providers are engaged in a grand conspiracy to kill him.

### B. Irreparable Harm

Again, this is not a case where the Plaintiff has received no medical treatment, and to the extent that he argues that the medical and prison personnel have not been sufficiently attentive to his needs, or that the treatment has not been efficacious, he has stated no more than a personal disagreement with his doctors. Nor has he shown, beyond speculation, that he will be irreparably harmed if the Court does not order that he be again taken to an outside hospital.

### C. Harm to Others / Public Interest

These last two factors pertinent to injunctive relief may be viewed together. In this motion, Plaintiff asks that the Defendants be ordered to undertake specific medical actions. The MDOC has an interest in promulgating and enforcing prison regulations, including reasonable rules involving prisoner health care. The public has an interest both in ensuring that prison inmates receive medical care, and also in having a well-regulated and efficiently operated prison system. The MDOC and its medical personnel, not to mention the Henry Ford system, have an interest in practicing medicine based on their best medical judgment and on the needs of their patients. "By granting the requested injunctive relief in this case, the Court would be in the untenable position of second-guessing Defendants' medical decisions, a task for which we are particularly ill-equipped." *Mitchell v. Badawi*, 2015 WL 4094372, at *2 (E.D. Mich. June 18, 2015), report and recommendation adopted, 2015 WL 4094395 (E.D. Mich. July 7, 2015)(citing *Westlake v. Lucas*).

In summary, A balancing of the factors weighs substantially against granting the extraordinary remedy of injunctive relief.

## IV.  CONCLUSION

I recommend that Plaintiff's motion for temporary restraining order and injunctive relief [ECF No. 66] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: October 19, 2020                               s/R. Steven Whalen
                                                                    R. Steven Whalen
                                                                    United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on October 19, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager
